ings, switches, turnouts, and turntables  *  *  * necessary for the housing and care of its cars," in locations approved of by the commissioners of city works, in the following territory, viz., in the streets adjacent to Montague street, west of the crest of the hill leading to the ferry.  This short road has been completed and in actual operation since July, 1891.  It runs on a level street from Court street to the crest of the hill, and then down a heavy grade to the ferry, on a viaduct crossing over but one street (Furman street) at an elevation of some 30 or more feet above the level of that street.  The power station and car house were located west of the hill, on State street, about 1,270 feet from the line of the road, and also the necessary sidings, turntables, switches, and turnouts to reach the same, with the due approval of the commissioner of city works.  The city contends that, notwithstanding such locations with such approval, plaintiff has no right to connect with the car house, because State street is not "adjacent to Montague," in the sense of touching that street.  The road from Court street to top of this hill runs through one of the finest residential portions of the city, which was doubtless the reason for the prohibition of the housing of cars east of the hill, or the use of adjacent streets east of the hill for sidings, etc.  The conformation of the ground and viaduct over which the road runs westerly from the top of the hill down to the ferry absolutely precludes the use of any locality for housing cars except such as can be reached from the end of the road at the ferry, and, as no street touches the road to Montague street at any point west of the hill, therefore it seems to us the word "adjacent" must be construed to mean the neighboring streets, or those near to the road west of the hill.  If this is not so, then the authority and consent given by the resolutions to house cars, and construct sidings and turnouts to reach the same, in the location approved of by the commissioner of city works, would be an idle jumble of words.  Such a restricted definition of the word "adjacent" will not be allowed to destroy the grant and consent intended to be conferred in respect to the housing of cars, and the construction of turnouts for that purpose.  The trial court has decided that the locations of the car house, and turnouts to reach it, are the most practicable and the best adapted to prevent interference with residences that could be found, and that they were approved of by the commissioner.  The common council has given a permission to plaintiff to locate its car house, and turnouts to reach it, at such points in the designated territory as were approved by the commissioner of city works, and the subsequent ordinance of 1890 could not operate to withdraw this consent, and require another consent from the common council.  This plaintiff was organized, and acquired the right to build the road, under Laws 1884, c. 252, and Laws 1886, c. 642, and is therefore excepted from the provisions of Laws 1888, c. 583, tit. 22, § 24; for it is expressly provided that they do not apply to roads then or thereafter authorized by law. Section 24 is simply a re-enactment (in the consolidation of local laws in the act of 1888) of a provision existing before the acts of 1884 and 1886, and does not repeal these acts; and, besides, section 35, Laws 1888, provides that nothing in the repealing clause thereof shall modify or in any manner affect any general statute.  For these reasons we think the judgment should be affirmed, with costs.

---

RINGLER et al. v. REYNOLDS et ux.

(Supreme Court, General Term, First Department.  May 13, 1892.)

FRAUD OF AGENT—CANCELLATION AND ASSIGNMENT OF CONTRACTS.
   Plaintiffs employed to buy land for them an agent who had falsely represented that the land was owned by a distant relative, and who thereupon procured a contract for the purchase of the same, to be made in his wife's name, at a sum much less than that at which he had represented that it could be bought, and by fraudulent concealment of such contract induced plaintiffs to make a contract with his wife for the purchase thereof.  Held, in the absence of proof by the wife that she

was a *bona fide* purchaser, and that she had actually employed her husband as agent, that the contract between plaintiffs and her would be canceled, and an assignment to the plaintiffs of her contract with the owner would be compelled.

Appeal from special term, New York county.

Action by Frederick A. Ringler and Justin Ringler against William M. Reynolds and Jessie Reynolds. There was a judgment for plaintiffs, PATTERSON, J., expressing the following opinion:

"The facts appearing by the proofs in this cause entitle the plaintiffs to the judgment they ask for. Some technical criticism may be made of the complaint, and if the success of the plaintiffs depended upon the establishment of the allegations of the complaint that Mrs. Reynolds had knowledge of the imposition practiced by her husband upon the plaintiffs, it must be conceded that no adequate proof thereof appears upon the record. But the plaintiff's right of recovery does not depend upon any conscious participation of Mrs. Reynolds in the alleged fraud, nor upon her accepting the fruits of it with knowledge that it was committed. All the averments of the complaint on that subject may be disregarded, and a cause of action of equitable cognizance remains, the facts alleged being substantially and in brief as follows, viz.: That the plaintiffs employed Mr. Reynolds to negotiate for them as their agent the purchase of the land mentioned in the complaint; that he accepted the agency and began the negotiations; that during their pendency he represented to the plaintiffs that the property belonged to a distant relative of his wife, and could be bought for not less than $55,000; that these statements were false, and were fraudulently made to induce the plaintiffs to agree to give that sum for the land; that, on the plaintiffs agreeing to that price, Reynolds procured from the owners of the property a contract to sell the same to his wife for $49,000, which fact he concealed from the plaintiffs, and procured them to enter into a written contract to purchase from Mrs. Reynolds at $50,000, which contract they signed in ignorance of the fact that Mrs. Reynolds was the wife of their agent in the transaction, and was not the actual owner; that they paid $5,500 on account in a check to the order of Mrs. Reynolds, part of the proceeds of which was actually used by Reynolds to make the first payment on account of the contract through which Mrs. Reynolds was to acquire the title; and they ask that the contract between themselves and Mrs. Reynolds be canceled, and that she be compelled to assign to them the contract taken in her name as purchaser. All the facts thus generally stated have been proven in detail to my entire satisfaction. It is of no consequence that Mr. Reynolds was not a broker. He undertook to negotiate a purchase of the property for the plaintiffs, and it is evident that, some time during the progress of the negotiations with Mr. Embree, who represented the real owners of the land, he formed the scheme of making a profit out of the transaction by taking a contract in his wife's name, inducing the plaintiffs to believe that the real owner was a distant relative of his wife, and then to procure the enhanced price from them. The several stages of the development of this scheme may almost be traced in the testimony. It is clear from what Mr. Embree says that Reynolds did not pretend to be acting for himself or for his wife until just before the contract with her was signed. He stated to Mr. Embree that his principals were out of town, and lived in Boston, and it was not until the matter was about being closed that he said, in substance, that the purchase was a good thing, and he would have the contract made in the name of his wife. The case is simply one of an agent employed to buy specific property for a principal, taking for his own benefit the title in the name of a third party, also advancing nothing, holding such third party but as the real owner and seller, and then selling that same property to the principal at a greatly increased sum; the principal paying all that is to be paid to the real seller, and also the profit to the agent's *alter ego*. It cannot be doubted that if the agent had taken the contract in his own name a court of equity

would give the principal the benefit of it. *Taylor* v. *Salmon,* 4 Mylne & C. 138. If the third party is the mere cover for the agent, and it appears clearly that the interposed title or right of such third party is only colorable, and one taken to conceal the acts of the agent, the technical rules of rescission do not apply; for in equity the real nature of the transaction will be regarded, the purchase will be considered as made for the principal, and, all the parties being before the court, substantial justice will be done. If Mrs. Reynolds were a *bona fide* purchaser of the land, and as between her and the original vendors there had been, not only a formal contract, but an actual authorized purchase and an honest transaction, a different question would arise, and the points argued by the learned counsel for the defendants would then require serious consideration. But such is not the case. Although Mrs. Reynolds has answered the complaint, there is not a syllable of reliable testimony to show that she ever authorized her husband to buy this property for her, or that she ever knew anything about it prior to her signing the agreement. She did not present herself as a witness on the trial, although she might have cleared up the whole matter, and it is not for her husband to constitute himself by his mere statement her agent in a transaction in which he was acting as his employment by others, and necessarily in such a way as would prevent his acting for her. Agency for his wife seemed to have occurred to him after he had planned the scheme of injuring the plaintiffs. His real principals were the plaintiffs. From all that appears, Mrs. Reynolds may have been innocent of any intent to do wrong to the plaintiffs; but she stands on the record as a mere technical vendee of the land, as the person used to cover her husband's design, as one introduced as a third party through and by whom the additional price of the property might be extorted from the real purchaser. The burden of proof was thrown upon her to prove that she was in reality a purchaser from the owners, and not only a nominal buyer, and that the transaction was honest and fair, and that she actually had constituted her husband her agent to buy this land, and that she was not a mere shield for his deceit. She has not even attempted to do this. I think there can be no doubt of the power of the court to cancel the contract of the plaintiffs with Mrs. Reynolds under the circumstances, and to go further, and determine that they are entitled to an assignment of the contract made by their agent in her name, with the others; for the plaintiffs, in effect, paid everything that was paid to the vendors. They are entitled to a decree, but, all things considered, with costs only as against Mr. Reynolds."

Defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

*Townsend, Dyett & Einstein,* (*A. R. Dyett,* of counsel,) for appellant. *H. Daily, Jr.,* for respondent.

PER CURIAM. The judgment should be affirmed, with costs, upon the opinion of PATTERSON, J., at special term.

---

SCHWARTZ *et al.* v. LININGTON *et al.*

(*Supreme Court, General Term, First Department.* May 13, 1892.)

1. NOTICE OF TRIAL—SERVICE BY MAIL—REFERENCE. .
   Under Code Civil Proc. § 797, providing for service of notice of trial by mailing it to a party's attorney, the fact that it is not received does not affect the right of the court to make an order of reference thereon.

2. REFERENCE—PRESUMPTION—CONSENT.
   In the absence of showing to the contrary it will be presumed that a case referred on default of a defendant was a referable case, for which his consent was not necessary.

Appeal from special term, New York county.